## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ORANGEBURG DIVISION

| | |
|---|---|
| MICHAEL DIAZ, JEAN-NICHOLE DIAZ, and DIAZ FAMILY FARMS, LLC, on their own behalf and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>AMICK FARMS, LLC,<br><br>        Defendant. | C/A No.  5:22-cv-01246-SAL<br><br>**DEFENDANT AMICK FARMS, LLC'S, PARTIAL MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |

Defendant Amick Farms, LLC ("Amick"), by and through its undersigned attorneys, respectfully moves for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Plaintiffs' claims for violations of the Fair Labor Standards Act ("FLSA") ("Count One"), South Carolina Payment of Wages Act ("SCPWA") ("Count Two"), and South Carolina Unfair Trade Practices Act ("SCUTPA") ("Count Three"), as well as state common law claims for breach of contract accompanied by a fraudulent act ("Count Four") and breach of the implied covenant of good faith and fair dealing ("Count Five"). Amick submits the following Memorandum of Law in Support.

## BACKGROUND[1]

Plaintiffs Diaz Family Farms, LLC ("Diaz Family Farms"), and Mr. and Ms. Diaz (collectively, "Plaintiffs") primarily complain about their contractual relationship with Amick, wherein for a short period of time Plaintiffs raised broiler chickens for Amick after hatching until maturity for processing.  Dkt. No. 1 (Plaintiffs' Complaint (hereinafter "Compl.")) ¶¶ 15; 17; 46; 48; 49; 51; 53 73; 75; 76.  Despite the contract's explicit agreement

---

[1] Amick disputes Plaintiffs' factual allegations; however, for purposes of the instant Motion to Dismiss, the facts are set forth as alleged in the Complaint.

to the contrary, Plaintiffs contend that they are not independent contractors, but rather are somehow employees of Amick. Based on this purported misclassification, Plaintiffs assert claims under the FLSA and SCPWA, as well as under ERISA, and thus seek a declaration that they are entitled to "a declaratory judgment affirming that Plaintiffs and the other class members are employees under the relevant state and federal laws and are not independent contractors." *Id.* at 16-17 ¶¶ 94-99; 17-18 ¶¶ 101-110; 21 ¶ 139; 22 ¶ H.

The remaining allegations relate to Plaintiffs' unhappiness regarding the terms of their contract, *see, e.g.*, Compl. at 18-21, and serve as the bases for Plaintiffs' claims under SCUTPA, for breach of contract accompanied by a fraudulent act, and for breach of the implied covenant and fair dealing.[2] *Id.* In connection with those claims, Plaintiffs essentially complain about Amick's alleged "pretextual" termination of a contractual relationship pursuant to a clear provision of the "Broiler Grower Contract," Compl. ¶¶ 122-126. Plaintiffs also take issue with Amick's purportedly "not show[ing] Plaintiffs the contract terms until after Plaintiffs had already taken on burdensome loans," Compl. ¶ 130. Plaintiffs also assert, without any specification or plausible factual basis, that Amick somehow "breach[ed] the implied covenant of good faith and fair dealing." Compl. ¶ 128.

## LEGAL STANDARD

Rule 12(b)(6) authorizes a party to move to dismiss a cause of action that fails "to state a claim upon which relief can be granted." To avoid dismissal under Rule 12(b)(6), a

---

[2] While Plaintiffs' Complaint vaguely references, on a single occasion, a "single flock contract," in addition to the "Amick Grower Contract (captioned as the 'Broiler Grower Contract')," Compl. ¶ 32, all of the remaining allegations and each of Plaintiffs' claims expressly relate only to the so-called "Broiler Grower Contract." Compl. ¶ 32; *see, e.g. id.* ¶¶ 34-35; 38; 40; 42; 44; 65; 117; 122; 134. Plaintiffs do not allege that a "single flock contract" was breached and otherwise refer only to the "Broiler Grower Contract" throughout the Complaint. With respect to Plaintiffs' contract-related claims, the allegations expressly refer only to the "Broiler Grower Contract," *see* Compl. ¶¶ 122; 132, thus this is the only contract addressed herein.

complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). Although well-pleaded factual allegations must be accepted as true, a court need not accept as true legal conclusions, unwarranted inferences, or arguments cast as factual allegations. *See id.*; *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). "A plaintiff 'must allege sufficient facts to establish th[e] elements' of his claim and 'advance [that] claim across the line from conceivable to plausible.'" *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A conclusory assertion is a conclusion without "factual enhancement" to support the conclusion. *Id.* In other words, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" to defeat dismissal. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted)).

## ARGUMENT

### I.     PLAINTIFFS' FLSA CLAIMS SHOULD BE DISMISSED.

#### A.     Diaz Family Farms Should Be Dismissed As A Plaintiff for Purposes of the FLSA Claim Because It Is Not An Individual Employed by An Employer.

As an initial matter, Plaintiff Diaz Family Farms' FLSA claim must be dismissed because it is not an "individual" employee within the meaning of the FLSA. More specifically, the FLSA defines "employee" to mean "any individual employed by an employer." 29 U.S.C. §203(e)(1). As a legal entity, Diaz Family Farms cannot be an "individual" within the meaning of the FLSA. Accordingly, Diaz Family Farms' FLSA claim should be dismissed.

**B. Assuming *Arguendo* That Mr. and Mrs. Diaz Were "Employees," They Are Exempt from the FLSA's Minimum Wage Requirement.**

The FLSA generally requires employers to pay their employees, *i.e.*, individuals with whom there is an employer-employee relationship, a minimum wage of at least $7.25/hour unless the employee qualifies for one or more exemptions from coverage. *See* 29 U.S.C. § 201, *et seq.* Here, even if Mr. and Mrs. Diaz could somehow establish that they were employees under the FLSA, which they cannot, Plaintiffs' FLSA claim should still be dismissed because they are exempt from FLSA coverage based on both the agricultural and executive exemptions.

### i. Mr. and Mrs. Diaz are Exempt Owners.

Mr. and Mrs. Diaz are exempt from the FLSA minimum wage requirement because they qualify as exempt owners. The FLSA exempts "any employee employed in a bona fide executive…capacity" from its minimum wage requirements, 29 U.S.C. § 213(a)(1), which "includes any employee who owns at least a bona fide 20-percent equity interest in the enterprise in which the employee is employed…and who is actively engaged in its management." 29 C.F.R. § 541.101.

Mr. and Mrs. Diaz jointly own Diaz Family Farms.[3] As made clear by the Diaz Family Farms' Articles of Organization filed by Mr. and Mrs. Diaz with the South Carolina Secretary of State, a copy of which is attached hereto as Exhibit A, as well as Mr. and Mrs. Diaz's marriage license, a copy of which is attached hereto as Exhibit B, Plaintiff Diaz Family Farms is jointly owned 50-50 by Mr. and Mrs. Diaz.[4] *See, e.g.*, *Simpson v. Simpson*, No. 2007-UP-

---

[3] Diaz Family Farms, LLC is marital property under South Carolina law. *See* S.C. Code § 20-3-630 (defining marital property).

[4] A court may take judicial notice of information when the fact is not subject to reasonable dispute. *See generally* Fed. R. E. 201. Rule 201 provides that a court "may take judicial notice at any stage of the proceeding." Fed. R. E. 201(d). Here, the Articles of Incorporation and Marriage License attached as Exhibits hereto evidence facts "generally known" and

4

147, 2007 WL 8327395, at *2 (S.C. Ct. App. Apr. 4, 2007). As a result, even assuming they could be considered "employees" covered by the FLSA, Mr. and Mrs. Diaz are exempt from the FLSA's minimum wage requirements as "exempt owners."[5]

In sum, as the owners of Diaz Family Farms, Mr. and Mrs. Diaz are exempt from the FLSA's minimum wage requirements as they are employed in a bona fide executive capacity as owners actively engaged in its management. Accordingly, Plaintiffs' FLSA claim should be dismissed.

### ii. Mr. and Mrs. Diaz Are Exempt Agricultural Immediate Family Members.

Plaintiffs' FLSA claim should be dismissed for the additional reason that Mr. and Mrs. Diaz, as a married couple, are exempt from the FLSA's minimum wage requirements because they are agricultural immediate family members.

More specifically, the FLSA exempts from its minimum wage requirements "any employee employed in *agriculture*…if such employee is the parent, *spouse*, child, or other member of his employer's immediate family…" 29 U.S.C. § 213(6) (emphasis added). The FLSA defines "agriculture" to include "farming in all its branches and among other things includes…the *raising of …poultry*, and any practices…performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." *Id.* at § 203(f) (emphasis added).

---

which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. E. 201(b). As a result, Amick urges the Court to take judicial notice of these documents to establish undisputed facts, and to evaluate the same in connection with its consideration of the pleadings.

[5] Diaz Family Farms Articles of Organization indicate that management of the LLC is not vested in a manager or managers. *See* Exhibit A. In the absence of such managers, a South Carolina LLC is managed by its members, who have equal rights in the management and conduct of the company's business. *See* S.C. Code § 33-44-404.

As spouses, Mr. and Mrs. Diaz are exempt from the FLSA's minimum wage requirements because they are employed in agriculture by members of their immediate family; thus, Plaintiffs' FLSA claim is subject to dismissal.

### C.  Broiler Growers Like Plaintiffs Are Independent Contractors and Are Thus Not Covered By The FLSA's Minimum Wage Requirement.

Plaintiffs' FLSA claim should be dismissed for the additional reason that they were independent contractors and were not employees within the meaning of the FLSA.  As a result, Plaintiffs' FLSA claim fails because Plaintiffs are not covered by the statute's minimum wage requirement.

The U.S. Supreme Court has long recognized an independent contractor relationship between broiler growers and vertical chicken integrators.  *See Holly Farms Corp. v. N.L.R.B.,* 517 U.S. 392, 399–400 (1996) (applying FLSA agriculture definition to National Labor Relations Act case regarding chicken integrator live-haul crews); *Bayside Enterprises, Inc. v. N.L.R.B.,* 429 U.S. 298, 301–02 (1977) (applying FLSA agriculture definition to National Labor Relations Act case regarding truck drivers).  The Supreme Court has appropriately treated this type of relationship as legitimate.  Such an arrangement between an independent contractor as a grower and a vertical chicken integrator is standard and a common practice in the complex and multi-faceted agricultural poultry industry.  In *Holly Farms*, for example, the Court described a vertical chicken integrator's operations, including its independent contractor relationship with its growers:

> Holly Farms hatches broiler chicks at its own hatcheries, and immediately delivers the chicks to the farms of independent contractors. The contractors then raise the birds into full-grown broiler chickens. Holly Farms pays the contract growers for their services, but retains title to the broilers and supplies the food and medicine necessary to their growth. When the broilers are seven weeks old, Holly Farms sends its live-haul crews to reclaim the birds and ferry them to the processing plant for slaughter.

*Holly Farms*, 517 U.S. at 399–400.

6

Similarly, the *Bayside Enterprises* Court discussed and explained the operations of a vertical chicken integrator like Amick, including its traditional independent contractor relationship with its growers:

> The chickens are raised on 119 separate farms owned and operated by independent contractors. Pursuant to a standard contractual arrangement, Bayside provides each such farm with chicks, feed, medicine, fuel, litter, and vaccine. Bayside retains title to the chicks and pays the farmer a guaranteed sum, plus a bonus based on the weight of the bird when grown, in exchange for the farmer's services in housing and caring for the chicks. Bayside delivers the chicks to the independent farms when they are one day old and picks them up for processing about nine weeks later. During the nine-week period, the contract farmers feed the chicks with poultry feed delivered to their feedbins by Bayside drivers.

*Bayside Enterprises*, 429 U.S. at 301–02.

While these cases did not squarely consider the independent contractor status of chicken growers, they both recognize such a status and contractual arrangement to be legitimate and routine. Plaintiffs here allege the existence of such a standard contractual arrangement, as is the general practice in the agricultural poultry industry and like that described in *Holly Farms* and *Bayside Enterprises*. Pursuant to this contract, Amick provides its independent farmers with chicks, feed, medicine, fuel, litter, and vaccines, retains title to the chicks and pays a guaranteed sum, plus a bonus based on weight when the bird is grown, in exchange for services in housing and caring for the chicks until they are broiler chickens. Plaintiffs further allege that Amick delivered young chicks to them, then picked them up for processing some time later.

Plaintiffs' FLSA claim should be dismissed because Plaintiffs, as broiler chicken growers for a vertical integrator based on a contractual arrangement, were independent contractors. As independent contractors, Plaintiffs are not covered by the FLSA's minimum wage requirement; thus, Plaintiffs' FLSA claim should be dismissed.

## II.     PLAINTIFFS' CLAIM UNDER THE SCPWA SHOULD BE DISMISSED.

### A.     Plaintiffs' SCPWA Claim Should Be Dismissed Based on Conflict Preemption.

Plaintiffs allege that they are covered by the SCPWA and that Amick violated the SCPWA, and as a result, they were entitled to receive minimum wage. *See* Compl. at 17-18. Plaintiffs' SCPWA should be dismissed because it is preempted by the FLSA.

The FLSA provides comprehensive regulation of wages for employers in interstate commerce, including setting the minimum wage and requiring overtime premiums to covered non-exempt employees who work more than 40 hours during a work week.  The FLSA's provisions comprehensively govern the compensability of time spent while at work and preparing for work.  The statute includes criminal penalties for employers who willfully violate the minimum wage and overtime provisions.  29 U.S.C. § 216(a).  It provides plaintiffs with a private right of action, allowing them to sue in state or federal court and, if appropriate, recover back pay, liquidated damages, attorneys' fees, and costs.  29 U.S.C. § 216(b).  The statute also authorizes the Secretary of Labor to "supervise payment of unpaid compensation due under the Act and to bring actions for compensatory and injunctive relief for violations of the Act's minimum wage and overtime provisions."  *Kendall v. City of Chesapeake*, 174 F.3d 437, 449 (4th Cir. 1999) (noting the FLSA's "unusually elaborate" remedial scheme and finding that a plaintiff cannot cast what are essentially FLSA claims as claims arising under 42 U.S.C. § 1983).

Plaintiffs' SCPWA allegations do not raise the question of whether the manner in which they received compensation was proper, but rather, whether they were entitled to compensation.  *See, e.g.*, Compl. ¶ 105 (alleging that "Plaintiffs and class members were entitled to at least federal minimum wage of $7.25 per hour worked under the FLSA"); ¶ 106 (alleging that "Defendant failed to pay Plaintiffs and class members the wages they were

due"); ¶ 110 (contending that "Defendant knew Plaintiffs were employees and should have been earning at least the federal minimum wage").  That is an issue squarely addressed by the FLSA, and is thus preempted by FLSA.  *See Middleton v. Richland Cnty. Sch. Dist. One*, No. 3:17-cv-02116-JMC, 2017 WL 4518423, at *3 (D.S.C. Oct. 6, 2017).  Notably, Plaintiffs do not allege any distinct or additional damages by way of their SCPWA claim other than that already requested and governed by the FLSA.[6]  Plaintiffs are not seeking wages or compensation in excess of minimum wage, and the claims are predicated on the same set of facts.

Plaintiffs' SCPWA claim is based on the same purported failure to pay minimum wage as alleged in connection with their FLSA claim, and Plaintiffs seek the same remedy for the purported violation.  Accordingly, Plaintiffs' SCPWA claim is preempted and should be dismissed.  *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007); U.S. Const. art VI, cl. 2.

## B. Plaintiffs' SCPWA Notice Claim Should Be Dismissed Because There Is No Private Right of Action To Enforce Such Provision.

Plaintiffs appear to attempt to assert a claim under the SCPWA, on behalf of themselves and a putative class, for purported violation of the "notice" provisions (as well as for minimum wage which, as discussed, is preempted by the FLSA; *see supra* Section II.A).  *See* Compl. at 17-18 ¶¶ 100-110.  Plaintiffs' SCPWA claim should be dismissed because there is no private right of action to enforce those provisions of the Act.  *See, e.g.*, S.C. Code § 41-10-90 (providing for and outlining final enforcement mechanism related to SCPWA's "notice"

---

[6] As with Plaintiffs' FLSA claim, Amick disputes that an employer-employee relationship exists.  Plaintiffs' SCPWA should also be dismissed because Mr. and Mrs. Diaz were independent contractors and were not employees covered by the SCPWA.  *See supra* Section I.C; *see also Propel PEO, Inc. v. Roach*, No. CV 6:19-3546-HMH, 2020 WL 7264123, at *4 (D.S.C. Dec. 10, 2020) (dismissing SCPWA claim where conclusory statements regarding control in connection with employer-employee analysis were insufficient).

requirements set forth in § 41-10-30 and stating that "[i]n each case where a civil penalty assessed . . . is not paid within sixty days the Director of [LLR] [] shall bring an action against the assessed employer for collection of the penalty").

The statutory language is clear that Plaintiffs' claim fails because there is no individual private right of action to enforce a violation like those of which Plaintiffs complain. The SCPWA's remedial scheme further evidences that the SCPWA does not permit individual recovery and/or damages for violation of the "notice" provisions, even assuming Amick violated the provisions complained of (which Amick strenuously denies). *See generally* S.C. Code § 41-10-80 (governing "violations and penalties" of the SCPWA, including "civil actions by employees" and "administrative review of civil penalties," and providing that a private right of action exists for an employee only where there has been a "failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50"); *see also* § 41-10-90 (mandating that "[a]ny amounts collected [from an employer by the Director of LLR in connection with a civil penalty assessed] must be turned over to the State Treasurer for deposit in the general fund of the State").

Instead, the SCPWA provides qualifying employees with a limited private right of action to enforce and collect only unpaid wages they are due to be paid pursuant to the SCPWA's medium of payment and payment of wages requirements: "If an employer *fails to pay wages due* to an employee as required under Section 41-10-40 [or 41-10-50], the employee 'may recover in a civil action an amount equal to three times the full amount of the unpaid wages." *CentraArchy Rest. Mgmt. Co. v. Angelo*, No. CV 2:18-10125-MBS, 2019 WL 5872134, at *3 (D.S.C. Apr. 22, 2019) (quoting S.C. Code § 41-10-80(C)). "The purpose of the SCPWA is to protect employees from the unjustified and willful *retention of wages* by the employer." *Id.* (citing *Rice v. Multimedia, Inc.*, 318 S.C. 95, 98, 456 S.E.2d 381, 383 (1995)).

Courts in this District have held that the "SCPWA does not provide a private cause of action for violation of [S.C. Code § 41-10-30(A)]"—which is the "notice" provision of the statute that Plaintiffs attempt to enforce here. *Sawyer v. Tidelands Health ASC, LLC*, No. 2:19-CV-1612-SAL-MHC, 2021 WL 4596919, at *14 (D.S.C. July 26, 2021), *R&R adopted*, No. 2:19-CV-1612-SAL, 2021 WL 4272594 (D.S.C. Sept. 21, 2021) (on appeal on other grounds); *see also Tarry v. Captain George's of S.C., LP*, No. 4:19-CV-00800-SAL, 2020 WL 12787708, at *3 (D.S.C. Sept. 21, 2020) (dismissing Plaintiffs' SCPWA "notice claims, *i.e.*, those for violation of section 41-10-30(A)'s notice requirement" with prejudice and holding that, "[w]hile an employee has a private right of action for an employer's violation of other sections of the SCPWA, he does not have a private right of action for violation of section 41-10-30(A)"). The SCPWA does not grant an individual employee the right to enforce any other aspects of the statute other than to recover unpaid wages due based on violation of S.C. Code §§ 41-10-40 or -50; rather, the notice aspects set forth in § 41-10-30 are administrative issues and within the purview of the Department of Licensing and Regulation to enforce. *See, e.g.*, S.C. Code §§ 41-10-80(A), (B), (D) &-90.

Here, to the extent the allegations are not duplicative of and identical to their FLSA claim, Plaintiffs' SCPWA claim is essentially based only on the following notice allegations:

- "Defendant failed to provide proper notice to Plaintiffs and class members at the time of hiring." Compl. ¶ 104.[7]

- "Defendant did not give written notification to Plaintiffs and class members of the amount and terms of the deduction as required by South Carolina law." Compl. ¶ 109.

---

[7] Amick notes that Plaintiffs fail to elaborate or expand upon the alleged failure to provide "proper notice," and have failed to explain exactly how they believe Amick failed to provide "proper notice," and have not defined what alleged "proper notice" they believe was owed.

As mentioned, these allegations do not relate to a claim for allegedly unpaid "wages," but instead solely concern certain administrative requirements of the Act—requirements for which the Director of LLR is given the sole responsibility of enforcing.  *See Tarry v. Captain George's of S.C., LP*, No. 4:19-CV-00800-SAL, 2020 WL 12787708, at *3 (D.S.C. Sept. 21, 2020); *see also* S.C. Code §§ 41-10-80 & 90; *infra* Section II.C.  The SCPWA expressly states that an employee is only entitled to proceed in a civil action "[i]n case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50," S.C. Code § 41-10-90(C), but <u>not</u> to enforce an administrative requirement regarding certain notice.  Plaintiffs' SCPWA notice allegations do not arise out of a failure to pay wages as required by Section 41-10-40 or 41-10-50, and Plaintiffs lack a private right of action as to this claim.

In sum, Plaintiffs' SCPWA claim, to the extent it is not preempted, relates only to alleged violations of administrative "notice" provisions of the statute set forth in S.C. Code § 41-10-30, a provision for which there is no private right of action and no individual remedy.  *See Sawyer v. Tidelands Health ASC, LLC*, No. 2:19-CV-1612-SAL-MHC, 2021 WL 4596919, at *14 (D.S.C. July 26, 2021), *R&R adopted*, No. 2:19-CV-1612-SAL, 2021 WL 4272594 (D.S.C. Sept. 21, 2021) (on appeal on other grounds); *Tarry v. Captain George's of S.C., LP*, No. 4:19-CV-00800-SAL, 2020 WL 12787708, at *3 (D.S.C. Sept. 21, 2020); *see also Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 941 (D.S.C. 1997) (holding that a delay in payment of wages does not violate the SCPWA).  Accordingly, Plaintiffs' SCPWA claim should be dismissed with prejudice.

C. <u>Even if A Private Right of Action Existed, Plaintiffs' SCPWA Notice Claim Fails Because Plaintiffs Failed to Comply (And Have Not Alleged That They Complied) With The Mandatory Statutory Scheme To Initiate A Complaint.</u>

Even if there was a private right of action to enforce the notice provisions of the SCPWA, Plaintiffs' claim should be dismissed for the additional reason that the claim is not

yet ripe. Plaintiffs failed to comply (and failed to allege they complied) with the statutory administrative procedure designed to address an employer's violation of a "notice" requirement of the SCPWA.

More specifically, the SCPWA statutory scheme unambiguously addresses the procedure and how an alleged employer violation of certain provisions of the Act are to be handled, and by whom, including the "notice" provisions. *See generally* S.C. Code §§ 41-11-10, *et seq.* The SCPWA expressly and clearly outlines the procedure to be followed if there is a question about an employer's compliance with the Act's "notice" provisions. S.C. Code §§ 41-10-80(A)-(B) & -90; *see also id.* § 41-10-30. As to the "notice" requirements of the SCPWA, upon which Plaintiffs here base their SCPWA claim, the Act provides that the Director of the Department of Labor, Licensing, and Regulation ("Director of LLR") is responsible for handling such violations by providing either a written warning or assessing civil penalties with employers directly. *See* S.C. Code § 41-10-80(A). Section 41-10-90 then goes on to provide that, if a civil penalty is assessed but not paid within 60 days, the Director of LLR *shall* bring an action for collection of such a penalty. S.C. Code § 41-10-90.

Here, Plaintiffs have not alleged (and cannot allege) that any of them lodged a complaint with the LLR regarding any issue or potential violation by Amick of the SCPWA "notice" provisions prior to filing the instant lawsuit. As the SCPWA's plain language makes clear, such a process is required prior to bringing a federal claim for violation of those aspects of the SCPWA. Plaintiffs' SCPWA claim should thus be dismissed because they failed to allege that they have abided by the plain requirements of the statutory scheme, which was enacted to address an alleged employer violation of the "notice" provisions by the Director of LLR's issuance of a letter and/or civil penalty. *See* S.C. Code § 41-10-80(A), (B), (D) & 90.

### D.  **Plaintiff Diaz Family Farms Should Be Dismissed As An SCPWA Plaintiff.**

Additionally, at a minimum, Plaintiff Diaz Family Farms should be dismissed as a plaintiff for purposes of the SCPWA claim ("Count Two").  All three of the named Plaintiffs purport to bring the SCPWA claim against Amick; however, Diaz Family Farms, LLC is not and cannot be an "employee" within the meaning of the statute.  *See* S.C. Code §§ 41-10-10, *et seq.*  While the SCPWA does not specifically define employee, the statute's plain language makes clear that an LLC does not qualify as an individual employee entitled to enforce the Act.  *See also* 29 CFR § 1620.8; FLSA 29 U.S.C. § 203(e)(3) (defining "employee," for purposes of the FLSA, as "any *individual* employed by an employer") (emphasis added).  As a result, Plaintiff Diaz Family Farms, LLC is not a proper plaintiff, and lacks standing for purposes of the SCPWA claim.  Accordingly, Diaz Family Farms, LLC should be dismissed as a plaintiff for purposes of this claim.

### III.  **PLAINTIFFS' SCUTPA, BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT, AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS ARE PREEMPTED BY THE FLSA.**

Plaintiffs' claims for SCUTPA ("Count Three"), breach of contract accompanied by a fraudulent act ("Count Four"), and breach of implied covenant and fair dealing ("Count Five") arising under South Carolina law should be dismissed because they are all preempted by the FLSA.  Each of these state law claims essentially attempts to recast the same allegations and issues already raised and subject to redress through Plaintiffs' FLSA claim.  As a result, Plaintiffs' duplicative claims fail and should be dismissed based on obstacle preemption.

The Fourth Circuit has held that a plaintiff cannot do what Plaintiffs are attempting to do here—a plaintiff cannot creatively plead causes of action arising under state common or statutory law in an attempt to obtain relief that is only available under the FLSA.  *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194–95 (4th Cir. 2007).  In *Anderson*, the Fourth Circuit dismissed the claims of a putative class for breach of contract, negligence, and fraud,

finding that each was precluded based on obstacle preemption. *Id.* Other courts have held the same. *See, e.g., Choimbol v. Fairfield Resorts, Inc.,* No. 2:05cv463, 2006 WL 2631791, at *4–6 (E.D. Va. Sept. 11, 2006); *Moeck v. Gray Supply Corp.,* No. 03–1950, 2006 WL 42368, at *2 (D.N.J. Jan. 6, 2006); *Chen v. St. Beat Sportswear, Inc.,* 364 F. Supp. 2d 269, 292–93 (E.D.N.Y. 2005); *Morrow v. Green Tree Servicing, L.L.C.,* 360 F. Supp. 2d 1246, 1252–53 (M.D. Ala. 2005); *Sorensen v. CHT Corp.,* No. 03 C 1609(L), 2004 WL 442638, at *5–7 (N.D. Ill. Mar. 9, 2004); *Johnston v. Davis Sec., Inc.,* 217 F. Supp. 2d 1224, 1227–28 (D. Utah 2002); *Alexander v. Vesta Ins. Group, Inc.,* 147 F. Supp. 2d 1223, 1240–41 (N.D. Ala. 2001); *see also Nettles v. Techplan Corp.,* 704 F. Supp. 95, 100 (D.S.C. 1988) (finding plaintiffs' negligence claim against employer as duplicative of FLSA claim, thereby implicitly ruling that negligence claim was FLSA-preempted).

Here, a review of Plaintiffs' Complaint reveals that their unfair trade practices and contract-related claims are duplicative of the FLSA claim and are thus preempted. These state law claims are nothing more than state law versions of Plaintiffs' FLSA count, and rely on a determination by the Court that Plaintiffs (and a putative class) were actually misclassified in practice and under their contract with Amick as independent contractors rather than "employees" within the meaning of the FLSA. And as for Plaintiffs' SCUTPA claim, "[b]ut for the proscriptions of the [FLSA]," Defendants' conduct would not constitute the prohibited scheme that Plaintiffs allege. *Butchers' Union, Local No. 498 v. SDC Inv., Inc.*, 631 F. Supp. 1001, 1011 (E.D. Cal. 1986).

In other words, Plaintiffs' state law claims under SCUTPA and for breach of contract accompanied by fraudulent act and for breach of the implied covenant of good faith and fair dealing all rely on the same set of allegations and ultimate factual determination of Plaintiffs' independent contractor versus employee status—which all turn on whether Plaintiffs were

covered by the FLSA's minimum wage provision. *See Wider v. Richland Cnty. Sch. Dist. One*, No. 3:17-CV-02117-JMC, 2017 WL 4518425, at *3 (D.S.C. Oct. 10, 2017) ("The court finds that the state law claims plaintiff is asserting are preempted under the FLSA through conflict preemption."); *see also Bell v. 1220 Mgmt. Grp., LLC*, No. 17-CV-22479, 2018 WL 3054795, at *2 (S.D. Fla. June 20, 2018) (granting defendants' motion to dismiss and dismissing FTC Act and Florida Deceptive and Unfair Trade Practices Act, among others, as preempted by the FLSA); *Bule v. Garda CL Se., Inc.*, No. 14-21898-CIV, 2014 WL 3501546 (S.D. Fla. July 14, 2014) (dismissing state law claims for breach of implied agreement, *quantum meruit*, and unjust enrichment because the "claims are duplicative and preempted by the FLSA, which provides an adequate remedy at law"); *Choimbol v. Fairfield Resorts, Inc.*, No. 2:05cv463, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006) (dismissing plaintiff's state law claims for unjust enrichment, conspiracy and fraud, and RICO because "plaintiffs' common law claims . . . stem directly from their minimum wage and overtime claims under the FLSA. Defendants withholding of deposits and misrepresentation of minimum wage and overtime pay due to plaintiffs merely recasts the central claim in this case: violation of the FLSA"); *Petras v. Johnson*, No. 92-CIV-8298 (CSH), 1993 WL 228014 (S.D.N.Y. June 22, 1993) (dismissing two state law claims because "defendants' alleged fraud consists of the intentional frustration of the FLSA [] rules," and the claims were thus preempted).

More specifically, Plaintiffs' SCUTPA claim is nothing more than a thinly-veiled FLSA count:

- "[Amick] deceived Plaintiffs into accepting an independent contractor designation when [Amick] knew Plaintiffs were employees." ¶ 112.

- "[Amick] knows that Plaintiffs are employees and should be paid as employees." ¶ 114.

- "In an attempt to deceive Plaintiffs, the Amick Growers Contract claims that Plaintiffs are independent contractors." ¶ 115.

16

- Paragraphs 116-119 essentially allege Amick asserted some level of "control," and are an attempt by Plaintiffs to show Plaintiffs should have been considered "employees" under the FLSA.

- "[Amick] hired Plaintiffs as employees but, using its contractual language, deceived them into accepting an independent contractor relationship." ¶ 120.

As demonstrated above, all of the allegations made by Plaintiffs in connection with the SCUTPA count are duplicative of their FLSA claim. Proving the SCUTPA claim would necessarily require a finding of a violation of the FLSA. Plaintiffs' SCUTPA claim is thus preempted and should be dismissed.

Plaintiffs' breach of contract accompanied by a fraudulent act and breach of implied covenant of good faith and fair dealing counts are similarly duplicative of Plaintiffs' FLSA claim:

- "[Amick] hired Plaintiffs as employees but, using its contractual language, deceived them into accepting a termination clause." ¶ 126.

- "[Amick] presented Plaintiffs with a contract that repeatedly claimed Plaintiffs were independent contractors while simultaneously laying out an employment relationship." ¶ 129.

- "[Amick] knows that Plaintiffs are employees and should be classified and paid as employees." ¶ 131.

- "In an attempt to deceive Plaintiffs, the Amick Growers Contract claims that Plaintiffs are independent contractors." ¶ 132.

- Paragraphs 133-135 essentially allege that Amick asserted some level of "control," and are an attempt by Plaintiffs to show Plaintiffs should have been considered "employees" under the FLSA.

The above-allegations show that Plaintiffs' two contract-related claims are also reliant on proving a violation of the FLSA. There would be no purported "breach" of anything, or even a purported "fraudulent act," absent Plaintiffs successfully proving a violation of the FLSA— namely, their misclassification as independent contractors rather than employees. Because

these claims arise directly from their FLSA minimum wage claim and are premised on the same allegations, these claims should be dismissed.

Moreover, Plaintiffs do not appear to seek any remedy for these claims other than a determination that they were "employees" and thus covered by the FLSA.  In fact, Plaintiffs' "claim" for breach of the implied covenant of good faith and fair dealing claim does not even allege that Plaintiffs suffered any damage or injury as a result of the purported "breach." Without the element of damage, Plaintiffs fail to state a claim on which relief can be granted—but they also have no additional injury that requires redress—further supporting the derivative nature of Plaintiffs' state law claims.  *See also Bell v. 1220 Mgmt. Grp., LLC*, No. 17-CV-22479, 2018 WL 3054795, at *2 (S.D. Fla. June 20, 2018) ("[I]t is immaterial that plaintiffs are seeking compensation under separate claims for separate damages against defendants as the contested claims are still factually duplicative of the FLSA counts and based upon a violation of rights created by the FLSA.") (citing *Anderson*, 508 F.3d at 193).

Fundamentally, each of these state law claims arises out of the same contention—that Plaintiffs should have been paid minimum wage as employees based on the FLSA's requirements.  These state law claims are all dependent on a finding of the same alleged violation of the FLSA.  Accordingly, Plaintiffs' duplicative SCUTPA, breach of contract accompanied by a fraudulent act, and breach of implied covenant and fair dealing claims should be dismissed based on obstacle preemption.

IV.   **PLAINTIFFS' CLAIMS UNDER SCUTPA AND FOR BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED BECAUSE THERE IS AN ADEQUATE STATUTORY REMEDY AVAILABLE UNDER THE FLSA.**

As explained above, Plaintiffs have an adequate remedy available under the FLSA for their SCUTPA, breach of contract accompanied by a fraudulent act, and breach of implied covenant of good faith and fair dealing claims.  Plaintiffs essentially seek the same redress

18

for these causes of action as sought in their FLSA claim. For this additional reason, these claims should be dismissed.

The South Carolina Supreme Court has held that "[w]hen a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy." *Dockins v. Ingles Markets, Inc.*, 306 S.C. 496, 498, 413 S.E.2d 18, 19 (1992) (citing *Campbell v. Bi-Lo*, 301 S.C. 448, 392 S.E.2d 477 (Ct. App. 1990)). In *Dockins*, the South Carolina Supreme Court held that a plaintiff asserting both a claim for retaliation under the FLSA and one for wrongful discharge in violation of public policy under state common law was limited to the FLSA cause of action as it provided an adequate remedy for the alleged wrong. *Id.*; *see also Secka v. Florence Cnty. Sch. Dist. Three*, No. 4:20-CV-3342-JD-TER, 2021 WL 1821888, at *3 (D.S.C. Mar. 31, 2021), *R&R adopted,* 2021 WL 1608772 (D.S.C. Apr. 26, 2021); *Muller v. Westinghouse Elec. Co., LLC, LP*, No. 3:20-CV-1094-JMC-KDW, 2020 WL 8713663, at *5 (D.S.C. Aug. 14, 2020), *R&R adopted*, 2021 WL 389197 (D.S.C. Feb. 4, 2021); *Lugo v. Boeing Co.*, No. 2:19-CV-2995-RMG, 2020 WL 495336, at *4 (D.S.C. Jan. 30, 2020).

Here, as explained, Plaintiffs claims under SCUTPA and the two contract-related claims all seek to redress the same alleged wrong as Plaintiffs' FLSA claim. The FLSA also provides for adequate and available civil (and criminal) remedies for that alleged wrong. Therefore, Plaintiffs are limited to their remedies under the FLSA, and these claims are subject to dismissal.

## V.    PLAINTIFFS' SCUTPA CLAIM SHOULD BE DISMISSED.

Plaintiffs' claim for violation of SCUTPA should also be dismissed for failure to state a claim upon which relief can be granted. A plaintiff bringing a private cause of action under SCUTPA must allege and prove that the defendant's actions adversely affected the public interest, and Plaintiffs have failed to do so here. *Noack Enterprises Inc. v. Country Corner*

*Interiors, Inc.,* 290 S.C. 475, 351 S.E.2d 347, 349–350 (Ct. App. 1986). Conduct that affects only the parties to the transaction, as alleged in this case, provides no basis for a SCUTPA claim. *Robertson v. First Union Nat'l Bank,* 350 S.C. 339, 565 S.E.2d 309, 315 (Ct. App. 2002); *see also Ethox Chem., LLC v. Coca-Cola Co.*, No. 12-1682, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013) (holding that a plaintiff fails to state a claim under SCUTPA upon which relief can be granted where the complaint "fails to allege any specific procedures or business practices that create the potential for repetition").

Further, under South Carolina law, to survive a motion to dismiss, a "plaintiff must use *specific facts* to show that members of the public were or were likely to be affected." *Jefferies v. Phillips*, 316 S.C. 523, 451 S.E.2d 21, 23 (Ct. App. 1994) (emphasis added). "Absent specific facts, a plaintiff is merely offering a speculative claim about adverse public impact." *Morgan*, No. 6:13-CV-03593-JMC, 2015 WL 3888412, at *4 (D.S.C. June 24, 2015) ("Upon review, the court finds that the Complaint does not establish a claim under SCUTPA. Plaintiffs did not allege facts which suggest Defendants' actions have a potential to impact the public interest."). "In the course of human endeavor, every action has some potential for repetition. The mere proof that the actor is still alive and engaged in the same business is not sufficient to establish th[e] element [of potential for adverse public impact]." *Id.* (internal quotations omitted) (quoting *Jefferies*, 316 S.C. at 523, 451 S.E.2d at 24).

Here, Plaintiffs allege no facts, let alone specific facts, to support that any purported violation of SCUTPA by Amick has a potential to impact the public interest. *See, e.g.*, Compl. at 18-19 ¶¶ 111-120. Instead, the allegations made in connection with the SCUTPA claim rehash the same allegations previously made.

First, Plaintiffs claim that Amick somehow "deceived Plaintiffs into accepting an independent contractor designation" without giving any information as to how Plaintiffs were

supposedly deceived.  Compl. at 18 ¶ 112.  Plaintiffs further allege that Amick "did not show

Plaintiffs the contract terms until after Plaintiffs had already taken on burdensome loans,"

as if this contention somehow supports or evidences an unfair or deceptive trade practice—

which it plainly does not.  Compl. at 18 ¶ 113.  Plaintiffs again contend that, "[i]n an attempt

to deceive Plaintiffs," the contract between the parties (and signed by at least one of the

Plaintiffs) provides that "Plaintiffs are independent contractors."  Compl. at 18 ¶ 115.

Finally, Plaintiffs assert that despite the plain language of the contract signed by the parties,

Amick "hides many of its stringent guidelines in separate handbooks and guidelines, which

the Amick Grower Contract requires Plaintiffs to follow."  Compl. at 19 ¶ 117.  None of these

allegations remotely suggest adverse impact to the public interest.  Rather, Plaintiffs' claim

is defeated by their own allegations—Plaintiffs admit that the plain language of the contract

provides that additional requirements are set forth in other documentation, and Plaintiffs

further admit that they signed and entered into the contract and independent contractor

arrangement with Amick.  *See* Compl. ¶ 124.

Notably missing from Plaintiffs' Complaint is any plausible allegation, supported by

specific facts, that Amick's alleged actions have even a potential to impact the public interest.

*See e.g.*, *Mach Sols., Inc. v. Doosan Corp.*, No. 3-15-cv-03447-JMC, 2016 WL 2756429, at *4

(D.S.C. May 12, 2016) (dismissing plaintiff's SCUTPA claim and holding that, "when viewed

in their entirety, the allegations of the amended complaint only show that the outcome of this

case will affect these parties and not the broader public").  Plaintiffs fail to provide any

specific facts that suggest that their experience is likely to be the experience of others or had

any impact on the public whatsoever.  Plaintiffs appear to rely solely on the fact that Amick

continues to exist and practice in the same business as support that the public interest may

be impacted, and that is not sufficient to state a claim for SCUTPA.  *See Jeffries*, 451 S.E.2d

at 24; *see also Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502,

21

507–08 (4th Cir. 1992) ("While every private dispute doubtless has remote public ramifications, these cannot be held to satisfy the element of injury to the public interest which is a prerequisite to any recovery under the [SC]UTPA. Were the rule otherwise, every ordinary commercial dispute would become a candidate for the extraordinary remedies provided by the Act."); *Companion Prop. v. U.S. Bank Nat'l Ass'n*, No. 3:15-CV-01300-JMC, 2015 WL 7568613, at *9 (D.S.C. Nov. 24, 2015) (dismissing SCUTPA claim for failure to state a claim upon which relief can be granted, and noting that the "fact that an alleged misconduct occurred is not sufficient to establish that the misconduct amounts to a procedure or business practice"). Accordingly, Plaintiffs have not adequately plead their SCUTPA claim, and that claim should be dismissed for failure to state a claim upon which relief can be granted.

## VI.  PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT SHOULD BE DISMISSED.

### A.  Plaintiffs Failed To Plead Fraud With Particularity.

Plaintiffs' claim for breach of contract accompanied by a fraudulent act, purportedly brought on behalf of all three Plaintiffs and a putative class, should also be dismissed for failure to comply with the heightened pleading standard required for fraud claims. It is well-settled that a claim for breach of contract accompanied by a fraudulent act is subject to the heightened pleading standard of Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, Plaintiffs must plead their allegations of fraud with that requisite degree of particularity. *See also Smith v. Harr*, No. CV 2:21-03989-RMG, 2022 WL 1229019, at *4 (D.S.C. Apr. 25, 2022) (dismissing breach of contract accompanied by fraudulent act for failure to state fraud with particularity); *Lima One Capital, LLC v. DAC Acquisitions, LLC*, C/A 6:19-03547-DCC, 2020 WL 5816739, at *3 (D.S.C. Sept. 30, 2020) (granting motion to dismiss plaintiff's claim based on failure to satisfy the particularized pleading requirement of Rule 9(b)); *Davis v. Citimortgage, Inc.*, C/A No.

0:15-CV-04643-MGL, 2016 WL 4040084, at * 3 (D.S.C. July 28, 2016) (deeming plaintiff's South Carolina state claim for breach of contract accompanied by a fraudulent act appropriate for dismissal due to plaintiff's failure to "meet the heightened pleading standards mandated by Rule 9"); *Carrington v. Mnuchin*, Civil Action No. 5:13-03422-JMC, 2014 WL 4249876, at * 10 (D.S.C. Aug. 27, 2014) (dismissing plaintiffs' SC claim for breach of contract accompanied by a fraudulent act where, "[u]pon review, the court finds that plaintiffs' allegations of fraud . . . fail to satisfy their burden under Fed. R. Civ. P. 9(b)"); *Neuman v. Levan*, Civil Action No. 8:08-03418-HFF, 2009 WL 1856569, at * 3 (D.S.C. June 26, 2009) ("Plaintiffs' allegation that defendants engaged in false, misleading, and deceptive acts lacks any particularity.  It fails to give defendants notice of the 'time, place, and contents of the false representations,' but instead just makes a generalized claim of fraud.") (internal citation omitted); *Breckley v. Amway Corp.*, 1989 WL 140397, at *5 (D.S.C. Aug. 24, 1989) (finding the complaint "defective" because it included a number of factual allegations based on information and belief, which the court noted was "generally disallowed of pleadings pursuant to Rule 9(b)"). Nevertheless, Plaintiffs failed to allege fraud with particularity and instead improperly attempt to rely solely on general, conclusory statements.

### B. <u>Plaintiffs Failed To Plead The Time, Place, and/or Contents of the Alleged Misrepresentation</u>.

"To meet [Rule 9(b)'s] standard, a complaint must describe 'the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 729 (D.S.C. 2017) (quoting *U.S. ex. Rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999.  Plaintiffs allege none of these details, but instead rely solely on the conclusory and unsupported label of "fraud."  *See* Compl. ¶¶ 124; 126. This

generalized claim of fraud is insufficient to state a claim. *Neuman v. Levan*, No. CIV.A.8:08-03418HFF, 2009 WL 1856569, at *1, *3–4 (D.S.C. June 26, 2009) (dismissing breach of contract accompanied by a fraudulent act because the "allegations of fraudulent act lack particularity. They neither tell defendants when and where the false statements were made nor suggest the contents of the statements").

Here, Plaintiffs' claim for breach of contract accompanied by a fraudulent act should be dismissed due to their fatal failure to sufficiently plead the time, place, and contents of the alleged fraud.

### C. <u>Plaintiffs Failed To Plead All Elements and Failed To Plead Plausible Facts As Required To State A Claim.</u>

Further, to prove breach of contract accompanied by a fraudulent act, a plaintiff must demonstrate: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach. *Connor v. City of Forest Acres,* 348 S.C. 454, 465–66, 560 S.E.2d 606, 612 (2002) (citing *Harper v. Ethridge,* 290 S.C. 112, 119, 348 S.E.2d 374, 378 (Ct. App. 1986)). Plaintiffs only allege that Amick made a promise to perform and then failed to perform and/or terminated the contract in line with the contract's termination provision. This is not a fraudulent act. In fact, Plaintiffs have not pointed to any provision of the Broiler Contract that Amick breached. But setting aside Plaintiffs' failure to sufficiently allege a breach, if every failure to perform a contract constituted a fraudulent act, every breach of contract claim could be actionable as one accompanied by a fraudulent act. *See Connor*, 348 S.C. at 465; 560 S.E.2d at 612. Taken in the light most favorable to them, Plaintiffs have failed to plead the allegations of breach of contract accompanied by a fraudulent act with particularity as required by Rule 9(b)'s heightened pleading standard. *See* Compl. at ¶¶ 121-126.

Essentially, Plaintiffs' fraud allegations concern a breach of contract because Amick terminated the Broiler Grower Contract with Mr. Diaz for what Plaintiffs contend was a pretextual reason and/or that Amick somehow "hired Plaintiffs as employees but, using its contractual language, deceived them into accepting a termination clause." Compl. ¶ 126. Plaintiffs' allegations fail to state a claim and are difficult to decipher. Not only has Plaintiff failed to allege the first element of this claim—that the contract was breached, but Plaintiffs' allegation also does not constitute fraud—let alone plead with the requisite degree of particularity. Thus, Plaintiffs' Complaint lacks specific factual allegations of any fraudulent act accompanying the purported breach. Plaintiffs' assertions fail to put Amick sufficiently on notice of the fraudulent act of which they complain.

While Plaintiffs attempt to claim a "fraudulent act" of using a pretextual reason to terminate the contract, using an express termination provision of the contract, such a non-specific and generalized assertion is similarly insufficient. Compl. ¶ 126. Plaintiffs' allegations lack particularity; they neither tell Amick when and where the purported fraudulent act took place, nor do they suggest factual information about the contents of the claimed pretext as required. *See id.* at *1. Rather, Plaintiffs' conclusory and unsupported assertion that Amick somehow breached the contract by terminating it for-cause is insufficient under Rule 9(b). *See Neuman*, 2009 WL 1856569, at *3–4. Even if Plaintiffs' pleading is construed to have plausibly asserted that the contract was breached, mere breach of contract, like that asserted here by Plaintiffs, does not constitute fraud. *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995) (citing *Dailey Co. v. American Institute of Marketing Systems,* 256 S.C. 550, 183 S.E.2d 444 (1971)). Plaintiffs here have not sufficiently alleged an independent fraudulent intent or act to have accompanied the purported breach by Amick with the degree of particularity required by Fed. R. Civ. P. 9(b). *See Minter v. GOCT, Inc.*, 322 S.C. 525, 529–30, 473 S.E.2d 67, 70 (Ct. App. 1996).

"[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)," *Harrison*, 176 F.3d at 783 n.5. Accordingly, Plaintiffs' fourth cause of action for breach of contract accompanied by a fraudulent act should be dismissed. *See, e.g., Smith v. Harr*, No. CV 2:21-03989-RMG, 2022 WL 1229019, at *5 (D.S.C. Apr. 25, 2022) (dismissing claim for breach of contract accompanied by a fraudulent act for failure to plead the allegations with the requisite particularity required by Rule 9(b)'s heightened pleading standard).

## VII.  PLAINTIFFS' CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED.

### A.  <u>Plaintiffs' Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Fails As A Matter of Law.</u>

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing under South Carolina law is subject to dismissal because there is no such cognizable claim under South Carolina law; thus, this "claim" fails as a matter of law. *See* Compl. at 20-21 ¶¶ 127-135. As recently reiterated by the South Carolina Supreme Court, such a claim is not a "separate and distinct" cause of action. *Hall v. UBS Fin. Servs., Inc.*, 435 S.C. 75, 86, 866 S.E.2d 337, 342 (2021). "It is clear then that if a party to a contract believes another party to the contract has breached the implied covenant of good faith and fair dealing, the cause of action is simply one for breach of contract." *Id.* For this reason, Plaintiffs' fifth cause of action for breach of the implied covenant of good faith and fair dealing is not legally cognizable and should be dismissed.

### B.  <u>Plaintiffs' Claim For Breach of The Implied Covenant Of Good Faith And Fair Dealing Is Also Subject To Dismissal As Factually Deficient.</u>

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing claim is also subject to dismissal for failure to state a claim because it is not supported by sufficient factual allegations. As set forth above, there is no separate cause of action for breach of the

implied covenant of good faith and fair dealing, but even generously construing this claim as one asserting breach of contract rather than a separate claim for breach of the implied covenant, it is still subject to dismissal because it is factually deficient under Fed. R. Civ. P. 12(b)(6).

Plaintiffs' allegations do not meet the elements of a breach of contract claim. Rather, Plaintiffs have merely attempted to plead "threadbare recitals of the elements" supported by general and conclusory statements. *See Iqbal*, 556 U.S. at 678. Under South Carolina law, the elements of a breach of contract claim include: (1) the existence of a contract; (2) its breach; and (3) damages caused by such breach. *Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48, 686 S.E.2d 200, 202 (Ct. App. 2009).

As noted above, Plaintiffs do not plausibly allege how or when Amick supposedly breached the Broiler Growers Contract, let alone breach the implied covenant within that contract. Plaintiffs' conclusory, unsupported allegation, with no plausible factual basis, that "Defendant . . . breached the contract by breaching the implied covenant of good faith and fair dealing," Compl. ¶ 128, is insufficient to state a claim for breach of contract. Such a threadbare allegation is insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Additionally, Plaintiffs have not even bothered with a rote recitation of the necessary elements to state a claim for breach of contract under South Carolina law. In addition to failing to adequately allege a breach, Plaintiffs have also not alleged that they were injured and suffered damages as a result of a purported breach by Amick. Damages caused by the breach is a necessary element to state an actionable breach of contract claim under South Carolina law. *Branche Builders*, 386 S.C. at 48; 686 S.E.2d at 202. In short, Plaintiffs have simply failed to allege any plausible facts sufficient to establish breach of contract and have failed to allege all requisite elements to state a claim upon which relief can be granted.

27

The South Carolina Supreme Court has held that "there is no breach of an implied covenant of good faith where a party to a contract has done what provisions of the contract expressly gave him the right to do." *UBS Fin. Servs., Inc.*, 435 S.C. at 87, 866 S.E.2d at 343 (quoting *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995)).  The Broiler Grower Contract provides Amick the express right to terminate it.[8]  *See* Amick-Diaz Broiler Grower Contract at 7 (Section C(2)), attached hereto as Exhibit C.

For these reasons, Plaintiffs' fifth cause of action for breach of the implied covenant of good faith and fair dealing should be dismissed for failure to plead the requisite elements and failure to plead sufficient plausible facts to state a claim.

## VIII.  PLAINTIFFS DIAZ FAMILY FARMS AND MRS. DIAZ SHOULD BE DISMISSED AS TO THE BREACH OF CONTRACT ACCOMPANIED BY FRAUDULENT ACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS.

Plaintiffs Diaz Family Farms and Mrs. Diaz should be dismissed as plaintiffs for purposes of their two contract claims (Counts Four and Five).  While all three of the Plaintiffs

---

[8] In ruling on a motion to dismiss under Rule 12(b)(6), a court generally may not consider materials outside the pleadings without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b).  In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *see also Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). The court may consider such a document, even if it is not attached to the complaint, if the document "was integral to and explicitly relied on in the complaint," and there is no authenticity challenge. *Kolon Indus.*, 637 F.3d at 448 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *see also Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 622 (D.S.C. 2011) ("In evaluating a motion to dismiss under Rule 12(b)(6), the Court . . . may also 'consider documents attached to . . . the motion to dismiss, so long as they are integral to the complaint and authentic.'") (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).  Here, Plaintiffs refer to their "Broiler Grower Contract" throughout the Complaint, and the contract is central to Plaintiffs' federal and state law claims.  *See, e.g.*, ¶¶ 32; 36; 40; 42; 44; 46-48; 68; 77-79; 115; 116; 122; 123; 133-134.  Therefore, Amick attaches the "Broiler Grower Contract" with Mr. Diaz as Exhibit C, subject to a Motion to Seal that will be filed.

purport to bring claims for breach of contract accompanied by a fraudulent act (Count Four) and breach of the implied covenant of good faith and fair dealing (Count Five) in connection with the Amick Grower Contract, *see* Compl. at 18; 21, the only parties to that contract are Mr. Diaz and Amick. *See* Exh. C (Amick-Diaz Broiler Grower Contract).

Simply put, Plaintiffs Diaz Family Farms and Mrs. Diaz are not parties to the Broiler Grower Contract with Amick, and are thus not entitled to bring a claim for breach of the contract or breach of the implied covenant of good faith and fair dealing. *See Trancik v. USAA Ins. Co.*, 354 S.C. 549, 553, 581 S.E.2d 858, 861 (Ct. App. 2003) (citing *Touchberry v. City of Florence*, 295 S.C. 47, 48-49, 367 S.E.2d 149, 150 (1988)) ("South Carolina contract law carries a presumption that an individual who is not a party to a contract lacks privity to enforce it.").

In sum, because Mr. Diaz is the only signatory to the Broiler Grower Contract with Amick, Plaintiffs Diaz Family Farms and Mrs. Diaz should be dismissed as plaintiffs for purposes of Counts Four and Five.

## CONCLUSION

For the reasons set forth herein, Amick Farms, LLC respectfully requests that this Court grant its Motion to Dismiss, and dismiss Counts One, Two, Three, Four, and Five of Plaintiffs' Complaint with prejudice.

s/ Brittany N. Clark
Angus H. Macaulay, Fed. ID #5248
Brittany N. Clark, Fed ID #12891
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, SC  29202
Telephone:  803.771.8900
Facsimile:  803.253.8277
AMacaulay@nexsenpruet.com
BClark@nexsenpruet.com

*Attorneys for Defendant Amick Farms, LLC*

June 6, 2022
Columbia, South Carolina